**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LORAD LLC d/b/a DIVERSIFIED FALL PROTECTION,** ) | **CASE NO. 1:20CV357** |
| ) | |
| Plaintiff, ) | **SENIOR JUDGE** |
| ) | **CHRISTOPHER A. BOYKO** |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| **AZTECA MILLING, L.P.,** ) | |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #7) of Defendant Azteca Milling, L.P. to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, the Motion is denied.

**I. FACTUAL BACKGROUND**

On February 18, 2020, Plaintiff Lorad LLC d/b/a Diversified Fall Protection filed the instant Complaint, seeking money damages for Breach of Contract, Promissory Estoppel, Unjust Enrichment and Conversion. Plaintiff has its principal place of business in the State of Ohio and specializes in the design, development, and manufacturing of highly individualized and custom fall protection systems. Defendant has its principal place of business in the State of Texas and is one of the world's largest producers of corn masa flour.

Defendant was first introduced to Plaintiff in 2013, through a third-party vendor who put Defendant in contact with Plaintiff's Texas-based representative, Ryan Spikowski. Defendant inquired whether Plaintiff could design, fabricate, install and train its employees on a customized fall protection system for various corn silos at its Plainview and


Edinburg storage facilities.

On February 21, 2014, Plaintiff sent Defendant Proposal 6558 which detailed the material terms of the project for the Edinburg facility, including the price, time of delivery, scope of services, existing site condition and scope of the system design. (Complaint, Exhibit A). On July 15, 2014, Defendant submitted Purchase Order 4501939631 regarding Proposal 6558 ("P.O. 9631"). The total price for the Edinburg installation was $243,993.33. (Complaint, Exhibit B).

On August 5, 2014, Plaintiff sent Defendant Proposal 6424-A which detailed the material terms of the project for the Plainview facility, including the price, scope of services, existing site conditions and scope of the system design. (Complaint, Exhibit C). On August 19, 2014, Defendant submitted Purchase Order 4501958279 regarding Proposal 6424-A ("P.O. 8279"). The total price for the Plainview installation was $81,763.41. (Complaint, Exhibit D).

Both proposals required Defendant to remit fifty percent of the payment upon the submission of engineering design drawings for approval, twenty-five percent upon shipment of the materials and twenty-five percent upon completion of the on-site installation and training.

As of November 19, 2014, Defendant accepted and approved the engineering design drawings for the custom-made fall protection system.

As of September 1, 2015, the fabrication, installation and training services were complete, as evidenced by the Project Sign Off / Owner Acceptance Forms signed by Defendant and attached as Exhibits E & F to Plaintiff's Complaint.

Plaintiff alleges that Defendant has failed to satisfy its payment obligation under the parties' agreement; and a balance of $107,367.32 is due and owing for materials, freight and labor costs associated with the design, fabrication, installation and training for the custom-made fall protection system.

In the Motion to Dismiss, Defendant argues that neither Azteca nor any of its employees ever traveled to Ohio to pitch, negotiate, execute or perform any obligations or duties under the contract with Plaintiff. Rather, per the contract, Plaintiff agreed to design, fabricate and ultimately install custom-made fall protection systems in Texas, as well as train Defendant's personnel in Texas on the maintenance and use of those systems. (See Reply Brief, ECF DKT #9 at 6-7).

Although admittedly, the terms of the agreement include "shipping point FOB Cleveland, Ohio," Defendant did not travel to Ohio and take possession of the custom-made fall protection systems. In fact, the system was shipped to Defendant in Texas through a third-party carrier paid by Defendant. Defendant did not take possession of the system until it arrived via a third-party carrier in Texas. (See *Id*. at 10). Consequently, any conversion of Plaintiff's property, which Defendant emphatically denies, would not have occurred in Ohio.

Defendant further contends that jurisdiction over it in the Ohio forum does not comport with due process since: "(1) Plaintiff cannot satisfy the "purposeful availment" test because Azteca's limited contacts with Ohio were entirely unrelated to its contractual relationship with Plaintiff; (2) Plaintiff cannot establish the "arises from" prong because Azteca performed no allegedly wrongful acts in Ohio; and (3) the exercise of jurisdiction here is unreasonable because it would impose a significant burden on Azteca, who has no physical

presence in Ohio, and on the potential third-party witnesses, many of whom reside in Texas." (*Id*. at 12).

## II. LAW AND ANALYSIS

Fed.R.Civ.P. 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction. The plaintiff bears the burden of showing that a federal court has personal jurisdiction over the defendant. However, when the court relies solely on written materials and affidavits, that burden is relatively slight; and the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetch Int'l, Inc.*, 503 F.3d 544 549 (6th Cir.2007). Here, the parties offer opposing and contradictory affidavits, each attesting to the business dealings in Ohio or the lack thereof. Nonetheless, the court is obligated to view the pleadings and affidavits in a light most favorable to the plaintiff; and when the court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not consider contrary facts proffered by the party seeking dismissal. *MAG IAS Holdings, Inc. v. Schmückle,* 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998); *see CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir.1996).

**General and Specific Jurisdiction**

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002), citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over

the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird*, 289 F.3d at 873 (citation omitted).

General jurisdiction over Defendant is lacking in the instant matter since Defendant's contacts with Ohio are not so "continuous and systematic." Defendant is a Texas limited partnership with its principal place of business located in Irving, Texas. Defendant's general partner and sole limited partner are Texas corporations with their principal places of business also located in Irving, Texas. Defendant has never registered to do business in Ohio. It has never maintained any offices, employees, agents or other physical presence in Ohio. In addition, Defendant has never owned any property in Ohio, nor does it have any business interests in Ohio.

On the other hand, specific jurisdiction exists if Defendant is amenable to service of process under one of the provisions of Ohio's long-arm statute and if the exercise of personal jurisdiction would not deny Defendant due process. *Bird*, 289 F.3d at 871.

**Ohio's Long-Arm Statute - R.C. § 2307.382**

Section (A)(1) of the statute reads:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting business in this state. . .

The term "transacting business" is interpreted very broadly by the Ohio Supreme Court. To "transact" means "to prosecute negotiations; to carry on business; [or] to have dealings." *Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 511 (6th Cir. 2006); *Faurecia*

*Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990).

Courts within the Sixth Circuit have held that "[t]ransacting business 'subsumes the narrower act of contracting.'" *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). Moreover, transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.'" *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall).* "Personal jurisdiction does not require physical presence in the forum state." *Business & Quality Integration, LLC v. Ratcliff*, 2015 WL 4610338, at *4 (S.D.Ohio 2015) (citing *Goldstein*, 70 Ohio St.3d at 236).

Defendant admits that it initiated contact in 2013, regarding a potential fall protection system for its silos, through Plaintiff's Texas-based representative. (Reply Brief, ECF DKT #9 at 3).

Plaintiff offers the Declaration (ECF DKT #8-2) of Rachel Kazimer, who is a resident of the State of Ohio, and a Project Assistant at [Plaintiff] Lorad, LLC d/b/a Diversified Fall Protection ("DFP") located at 24400 Sperry Drive, Cleveland, Ohio 44145. ¶ 1.

She states: "From July to November of 2014, [Defendant's] representatives, including Mr. Serna and Isidro Moreno, Administrative Manager at [Defendant], sent communications to me, Mr. Keough and Mr. Swenton, in Ohio, for the purpose of negotiating, designing, redesigning, and procuring the custom designed System." ¶ 7.

Further, at ¶ 10: "Throughout the life of the project, [Defendant] engaged in several

discussions and negotiations via email and telephone with me, and other representatives of [Plaintiff], in Cleveland, Ohio."

At ¶ 12: "All payments for the custom designed System were remitted by [Defendant] to [Plaintiff] in Cleveland, Ohio."

The agreed methods for correspondence and payment are outlined in Plaintiff's Proposal 6558 (Complaint Exhibit A, ECF DKT #1-1, 6) and clearly include an Ohio area code and address for Plaintiff.

**For Client Convenience DFP Accepts Purchase Orders, Contracts or Authorizations to Proceed One of The Following Ways:**
E-Mail: Send to: orderprocessing@fallprotect.com
Fax: Send to: 440-348-9455 ATTN: ORDER PROCESSING
Mail, UPS or FedEx to: 24400 Sperry Dr. Cleveland, Ohio 44145 ATTN: ORDER PROCESSING
Please reference proposal number on page one of this proposal

Furthermore, while Defendant disputes any agreement that the fall protection system would be fabricated in Ohio, Defendant admits to paying the shipping costs. In that regard, Plaintiff's Proposal 6558 additionally provides: "All shipments, shipping point FOB Cleveland, Ohio" and "Estimated Freight for materials: $6,000 from 44145 to 78541;" that is, from Cleveland, Ohio to Edinburg, Texas.

Significantly, as the Court has previously noted, on July 15, 2014, Defendant submitted Purchase Order 4501939631("9631") regarding Proposal 6558 and agreeing to its terms. Moreover, the same shipment and remittance terms are found in the August 2014 Plainview Proposal ("6424A") and Purchase Order ("8279").

When the email and telephone communications are considered together with the purchase orders, the Court finds that Defendant "carried on business" or "had business

dealings" with Plaintiff in Ohio that amounted to "transacting any business" in Ohio which satisfies the long-arm statute, R.C. § 2307.382.

**Due Process**

In order for personal jurisdiction to comply with due process, a defendant must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir.1968).

**Purposeful availment**

The Supreme Court has held that "[w]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between [itself] and residents of the forum, [it] manifestly has availed [itself] of the privilege of conducting

business there, and because [its] activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

Defendant purposely availed itself of the privilege of acting in Ohio by reaching into Ohio through telephone calls and email communications with Plaintiff beginning in 2013-2014 and purchase orders in July and August of 2014. The fabricated system was shipped, at Defendant's expense, from Ohio to Texas. Installment payments were sent to Ohio at designated points in the project. The interactions between Plaintiff and Defendant regarding the customized fall protection system continued until installation and training were completed in September, 2015. This continuing relationship is more than random, fortuitous or attenuated.

> If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

**<u>Arising from</u>**

The second prong of the due process test "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d 875 (citations omitted). Where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the action will be deemed to have arisen from those contacts." *CompuServe, Inc.*, 89 F.3d at 1267.

The Breach of Contract claim Plaintiff advances is based upon operative facts supporting the creation of two proposals and purchase orders and the balance of $107,367.32 due and owing for materials, freight and labor costs associated with the custom-made fall protection system. Although it is Defendant's contention that the alleged Breach of Contract claim is based upon Plaintiff's installation and training services performed outside of Ohio in Texas, this does not negate the fact that these services arose from the purchase orders Defendant sent into Ohio, from the parties' business transaction in Ohio, from fabrication and shipment of the system from Ohio and from Defendant's alleged failure to make payment in Ohio as required by the terms of the parties' agreement.

Under Ohio law, "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio." *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999), quoting *Cole,* 133 F.3d at 436. Therefore, Plaintiff has made a prima facie showing that Defendant's activities in Ohio give rise to Plaintiff's Breach of Contract claim.

**Reasonable exercise of jurisdiction**

According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). When the first two factors of specific jurisdiction are present as in this case, " a presumption arises that the exercise of jurisdiction would be 'reasonable' under the third factor." *Scotts Co. v. Aventis S.A.*, 145 F.App'x 109, 115 (6th Cir. 2005) (citing *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1092 (6th Cir. 1989)).

While defending itself in Ohio will likely be burdensome on the Texas Defendant, the Court finds it is not unduly so. Moreover, Ohio undoubtedly has an interest in enforcing contracts and in resolving a suit brought by an Ohio resident against Defendant, which has purposefully availed itself of acting in, and allegedly causing significant financial consequences to, an Ohio business in Ohio. The Court finds this is not that rare instance where Defendant's contacts with Ohio are so minimal that the burden outweighs the interests of Ohio.

### III. CONCLUSION

Therefore, for these reasons, the Court finds that Defendant is subject to this Court's exercise of specific personal jurisdiction. The Motion (ECF DKT #7) of Defendant Azteca Milling, L.P. to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is denied.

**IT IS SO ORDERED.**

**DATE: February 11, 2021**

                                     s/Christopher A. Boyko
                                     **CHRISTOPHER A. BOYKO**
                                     **Senior United States District Judge**